SETH NORTON vs. TIMOTHY BABCOCK.

A second attachment of all a debtor's right, title and interest in land, is an attachment of his right of redeeming it from the first attaching creditor to whom it may afterwards be set off on execution, and is an incumbrance on the land from the time it is made.

A., who had made the first attachment of land, caused it to be set off on execution, and then conveyed it to B. by deed, with a covenant that it was free of all incumbrances: C., who had made a second attachment of the same land, afterwards caused the debtor's right of redeeming it from A. to be sold on execution, and the purchaser took a deed thereof from the sheriff. *Held*, that such second attachment constituted an incumbrance, and that A. was liable to B. on said covenant.

Where an incumbrance on land is a right of redemption, or other paramount title, which exposes the grantee to a loss of his whole estate by eviction, the sum, which he fairly pays to extinguish such incumbrance, is the measure of damages, in an action against his grantor on the covenant against incumbrances, unless that sum exceeds the whole value of the estate. But if the grantee in such case pays more than the value of the estate, in order to extinguish an incumbrance thereon, his measure of damages is that value only.

If a judgment debtor, whose land is set off on execution, redeems it from the judgment creditor's grantee, and thus evicts him, the grantor is liable to the grantee, on the covenant against incumbrances, for the value of the land at the time of eviction. In such case, permanent buildings erected on the land, whether erected by the judgment creditor or his grantee, which are not repairs or improvements for which the debtor, by Rev. Sts. c. 73, § 24, must pay on redeeming the land, constitute a part of the value of the land, as they are a part of the freehold. And such buildings are also to be estimated as a part of the value of the land in ascertaining the amount of damages to which the grantor is liable to his grantee on such covenant, when the grantee, instead of yielding to the eviction, has, by paying a certain sum, extinguished the incumbrance of the debtor's right of redeeming.

THIS case came before the court on the report of the evidence, &c. at the trial before *Dewey*, J. The facts are fully stated in the opinion given by the chief justice.

SHAW, C. J. This is an action of covenant broken, arising upon a conveyance of estate with the usual covenants of seizin and warranty, and against incumbrances. The breach alleged is, that at the time of the conveyance, December 16th 1839, the estate was subject to an attachment, as the property of John Wheeler, at the suit of Ara Phelps, to extinguish which the plaintiff afterwards necessarily paid a sum of money under the circumstances hereinafter stated.

It appears that on the 26th of April 1839, said John

Wheeler owned one moiety of the estate in question, which was on that day attached by the defendant on mesne process, to secure a debt of about $ 1100. On the 9th of May 1839, the same moiety was attached on mesne process, by Ara Phelps, to secure a debt due to him of about $ 580. This, of course, was subject to the attachment of Babcock, the defendant.

Babcock obtained judgment at October term 1839, for $1109, and on the 30th of November levied his execution in due form of law on Wheeler's half of the estate, which was appraised and set off to him, at the sum of $ 1000, being part only of his debt.

At May term 1840, Ara Phelps recovered judgment in the suit, in which his attachment had been made, for $ 584, and on the 13th of July following caused Wheeler's right to redeem the premises to be sold on his execution, for $ 599·22, the amount of his judgment and costs. Edward A. Phelps, the son of the execution creditor, was the only bidder and the purchaser, and immediately took of the sheriff a deed of the same right to redeem.

It further appears, that on the 20th of October 1840, the said Edward A. Phelps, being about to redeem the estate of the plaintiff, pursuant to the right purchased at the sheriff's sale, it being within a year from the time of Babcock's levy, the plaintiff, in order to obtain a release of this right, and to extinguish the supposed incumbrance, gave to said Phelps his own note for $ 602·89, payable on demand with interest, and thereupon, and in consideration thereof, obtained a deed of release of all Phelps's right to redeem. That note has since, and since the pendency of this action, been paid.

This is, as we understand, the result of the facts reported, though perhaps not quite so fully stated. And we are to understand that this agreement was made in good faith, for the sole purpose of extinguishing the supposed right to redeem, and that the money due on the note was paid in good faith, and without any secret trust or reservation. If it was intended to insist that either of these facts was pretended or colorable, it should have been contested and submitted to the jury.

It further appears, that on the 9th of October 1839, the said John Wheeler, the debtor, conveyed all his interest in the premises to Chauncey W. Norton, who afterwards conveyed and released the same to Babcock, the defendant — being the same day on which he made his deed to the plaintiff, with the covenants in question. On the well known rule, that deeds of the same date shall be deemed to have been executed and to operate in such order as will best carry into effect the intent of the parties, this last deed may be presumed to have been executed to the defendant before his to the plaintiff; so that under the defendant's deed, the plaintiff obtained a release of all Wheeler's personal right in the premises, and all right which he then had the capacity to convey.

The first question is, whether the attachment made by Ara Phelps, May 9th 1839, was a valid and subsisting attachment, on the 16th of December, when the deed, with the covenants in question, was made, and if so, constituted an incumbrance upon the property conveyed. The ground taken on the part of the defendant is, that Wheeler's right to redeem the estate from Babcock's levy first sprang up and came into existence on the 30th of November 1839, when that levy was made, and could not be held, by force of an attachment made by Phelps on the 9th of May preceding ; and of course did not constitute an incumbrance on the 16th of December. But we are of opinion that this is taking much too narrow and technical a view of the subject. The policy of the law is, to enable a creditor to satisfy his demand from the property of his debtor, and to attach on mesne process, for security, any interest in real estate which after judgment he may appropriate by levy, sale or otherwise, in satisfaction of his debt. Rev. Sts. c. 90, § 23. But the creditor must of course take such interest as the debtor has, and subject to such changes as the prior liens or paramount claims of other parties may occasion. If the debtor holds the estate in his own right in fee simple, the attachment binds the whole estate ; but if he does not, then the attachment affects and holds such interest as the debtor has in it ; and if that interest is subject to changes in point of form, he must take it subject to

such changes. In this case, Phelps attached all the right, title and interest of Wheeler in the premises. Being subsequent in time to Babcock's attachment, it was in legal effect subject to it. If Babcock's attachment had failed, or been defeated by his failure to obtain judgment, or by his obtaining other satisfaction of his execution, or otherwise, then Phelps's attachment would have bound the whole estate. So where an estate is subject to a mortgage, the attachment is of the equity of redemption. But if the mortgage is paid and discharged, the attachment holds the estate as an estate in fee, to be levied upon accordingly. *Forster* v. *Mellen*, 10 Mass. 421. So where an attachment is of an undivided estate of the debtor, as tenant in common, and partition is made before judgment, the attachment binds the debtor's property held as sole tenant. *Crosby* v. *Allyn*, 5 Greenl. 453. *Bradley* v. *Fuller*, 23 Pick. 8. These cases are not strictly in point, but they are clearly analogous. They show that the law regards the debtor's interest as the substance, and will follow and attach to that interest, whatever changes of form it may undergo, in subservience to the rights of others, whose rights neither the debtor nor the attaching creditor may control.

I am aware that this right to redeem has been held to be a personal right or privilege, like a right of preëmption, and does not constitute an estate or interest. *Kelly* v. *Beers*, 12 Mass. 387. It was so considered under the former statutes, conformably to which the case cited was decided ; and it was held, in consequence, that such right of redemption was not attachable But the revised statutes, having made it attachable, have given it the character of an interest, like that of an equity of redemption of a mortgage, and put it upon the footing of a partial or derivative interest, capable of attachment, seizure on execution, sale, transfer and release.

But to examine the point a little more closely : It appears to us that Wheeler's right of redemption from Babcock's levy was attached by Phelps's writ on the 9th of May 1839, although Babcock's execution was not levied till the 30th of November following. The attachment of Phelps, on the 9th of May, was

of all Wheeler's right, title and interest in the real estate. It was a fee, if Wheeler owned a fee ; if it was subject to incumbrances by mortgage, attachment, lease, builder's lien, or otherwise, it was still the fee, the whole estate, subject only to such incumbrances, or temporary or partial interests in it. The fee embraces all interests or estates which may be derived or carved out of it. If such interests are discharged or extinguished between the attachment and the seizure on execution, the attachment holds the estate as an estate in fee simple. If they are partially extinguished or withdrawn, then the attachment remains binding on the whole estate, subject only to such remaining incumbrances or liens, and must be levied upon by metes and bounds, and set off on appraisement, or levied upon an aliquot part, to be held in common, if the debtor was a tenant in common, or sold at auction, if an equity of redemption, according as the debtor was tenant in fee simple, sole tenant, or tenant in common, or holder of an equity of redemption. In the present case, at the time of Phelps's attachment, the right and interest of Wheeler were those of a tenant in common of a moiety of the estate, subject to the prior attachment of Babcock. What then did his attachment hold, as Wheeler's interest ? It was obviously provisional, and depended on future contingencies. If the prior attachment should be discharged, he would hold it as undivided but absolute estate, being a moiety, and as such, must have taken the whole moiety, or an aliquot part of such moiety, at an appraisement. If in the mean time the other cotenants had obtained partition, he must have taken the whole of the debtor's property, or a portion of it, by metes and bounds, as an absolute estate, at an appraisement. Amongst other contingencies, which might affect and modify the debtor's estate, was that which in fact happened — that the prior attaching creditor might levy upon the estate and set it off. But as that, by operation of law, left the debtor a right of redemption, which the law makes an attachable interest, that interest was in the debtor at the time of the attachment, (9th of May,) and was bound by that attachment.

It may perhaps be said, that the attachment of May 9th bound

the estate subject only to the contingency of the prior attachment, for any cause, being defeated ; and as that was not defeated, but in pursuance of that attachment Babcock levied upon the whole estate, and set it off, at an appraisement insufficient to satisfy his own debt, nothing remained to be bound by the second attachment. But the fallacy of this argument appears to us to lie in supposing that the levy under the prior attachment does take the whole estate. It takes all which by law the creditor can take, which is only a defeasible and redeemable estate ; and the right to redeem it being itself now an attachable interest, there is a residuum in the debtor capable of being bound by attachment, and is therefore bound by an attachment whose grasp extends to the debtor's whole interest — absolute, conditional, temporary or partial — as it exists at the time of the attachment, or as it may be modified or changed by subsequent contingencies. And in answer to the suggestion, that the estate being taken at its whole appraised value, the right to redeem cannot be regarded as a valuable interest, it may be remarked that the law, by making it attachable, put it in the power of the creditor to deal with it as a valuable interest, and to take it or not, at his election ; that as the right of redeeming extends to one year, it may become valuable by an advance in the value of property, or otherwise, and be of considerable value at the time of redemption, although appraised at its full value at the time of levy ; and the creditor is entitled to the benefit of this contingency.

The court are therefore of opinion, that the attachment of May 9th, by Phelps, did bind the interest of Wheeler, and give the attaching creditor a right to hold the equity of redemption which might accrue to the debtor on the levy of the first execution ; that this was a subsisting incumbrance, on the 16th of December 1839, and a breach of the defendant's covenant that the estate was free of all incumbrances.

This view is a sufficient answer to any argument arising from the deed of Wheeler to Chauncey W. Norton, October 9th 1839. If we are right in the conclusion that Phelps's attach-

ment bound Wheeler's contingent right of redemption, no deed or other act of his could defeat that right.

The next material question is, what is the measure of dam ages which the plaintiff is entitled to recover, for this breach of covenant. Upon this point, it appears by the statement of facts reported as found by the jury, that on the 20th of October 1840, more than a month before the expiration of the right of redeeming the estate levied upon by the defendant, and by him conveyed to the plaintiff with covenants of 'warranty, Edward A. Phelps, the holder of this right to redeem, gave notice to the plaintiff of his intention to redeem ; whereupon the plaintiff, in good faith, and in order to discharge that right to redeem, and enable himself to retain the estate, paid $ 602·89, in order to extinguish such incumbrance. The value of the estate at that time, as found by the jury, was $ 1200 for the one moiety which was the subject of the levy, and the estate to be redeemed ; and the value of the improvements made upon it, $ 500.

It is contended for the plaintiff, that the amount thus paid by him to extinguish the incumbrance is the measure of his damage. But we think this cannot be laid down as a rule of damage, without considerable qualification. Where the incumbrance is of such a character, that if not extinguished it would take the whole estate, and it can be extinguished for less than the value of the estate, so that the amount paid for its extinguishment would bring a less onerous burden upon the covenantor, than he would have to sustain by an eviction, it being for his benefit as well as that of the owner to extinguish it, the amount paid for extinguishing it would be the measure of damages, because it would afford the plaintiff a perfect indemnity : Otherwise, if the amount thus paid exceeds the amount which the covenantor would have been bound to pay if the plaintiff had been evicted.

For instance, we will suppose the case of a conveyance with the usual covenants against incumbrances, and covenants of war- ranty : There is an outstanding mortgage, and the mortgagee is about to foreclose and oust the grantee. He must redeem or be evicted. If he is evicted, he will have a remedy on his cove- nant, and recover the value of the land at the time of the

eviction, and interest.   Now, if the value of the land be $ 2000, and the amount of the mortgage, with interest, $ 2500, should the grantee redeem and pay $ 2500 to extinguish the incumbrance, he could not recover that sum of his warrantor, although the incumbrance could not be extinguished for less ; beca ise the covenantor is liable only for the value of the land.   But if the mortgage should amount to $ 1500, and the grantee should pay that sum to redeem, it would constitute the measure of damages ; because it would afford an indemnity to the plaintiff, and bring a less charge on the covenantor than if the grantee had permitted the mortgagee to foreclose. ' In *Prescott* v. *Trueman*, 4 Mass. 627, it was held that a paramount title is an incumbrance, and if the grantee with covenants have extinguished it at a just and reasonable price, he may recover the amount on his covenant against incumbrances.   Of course, it must be understood to be a price just and reasonable as against the covenantor, and not exceeding what he would have been legally bound to pay, had the grantee yielded to the paramount title, instead of extinguishing it.   In *Wyman* v. *Brigden*, 4 Mass. 150, the estate conveyed by the defendant to the plaintiff, with covenants, was rightfully levied upon as the estate of Moses Gill, deceased, for $ 1800.   Before the year expired, the defendant, never having been put out of actual possession, redeemed by paying the $ 1800 ; it being found that the estate was worth $ 3000.   It was held that the plaintiff, having derived from the defendant all his estate in the land, including the right to redeem at a less sum than the actual value of the land, for which he might have been liable on eviction, the difference should enure to the benefit of the covenantor, and that therefore the sum paid for such redemption should be the measure of the plaintiff's damage.

We are then to apply this rule to the present case ; and the result will be, that if the sum of $ 602·89, paid-by the plaintiff to extinguish the right of redeeming, was less than the defendant would have been liable for, had the plaintiff permitted Phelps to redeem, then that is the measure of damage for which the defendant is now liable.   If it exceeds that amount, then he is liable only for the smaller amount.

We have seen that by operation of law Ara Phelps had an attachment ; that by the sheriff's sale Edward A. Phelps acquired the right to redeem, which, but for the attachment, Wheeler himself would have had. The terms on which an execution debtor, whose estate has been levied on, may redeem, are prescribed by Rev. Sts. *c.* 73, § 24. The debtor may redeem by paying the sum for which the premises were set off, with interest, all sums paid for lawful taxes and assessments, and such reasonable expenses as shall have been incurred in repairing and improving the premises ; deducting rents and profits which have been received, or which the creditor might have received, and with which he is justly chargeable. Probably, under the denomination of expenses incurred in repairing and improving the estate, the cost of large and expensive buildings, or similar improvements, would not be allowed ; because it would greatly tend to impede the right and power to redeem ; a right which the law intends to favor. Besides, the creditor knows that during the year he holds the premises levied on, only as a defeasible estate ; and if he puts large and permanent improvements upon them, it is at the peril of losing them on redemption ; and the increased value thus given to the premises would operate as a powerful inducement to a debtor, or person standing in his place, to avail himself of his legal right to redeem.

Upon such a statement of the account, the plaintiff would have been entitled to receive the money for which the estate was set off, $ 1000, with interest and expenses for repairs and improvements, &c. less the rents ; amounting, perhaps, to about $ 1100. As to the mode of accounting, see *Reed* v. *Reed*, 10 Pick. 398.

Had the plaintiff declined the offer to pay, what would have been the amount of damages ? As the estate granted by the defendant to the plaintiff actually passed by the conveyance, the defendant being seized, and having good right to convey, subject only to redemption by his creditor, the amount of damages he would have been liable for on his covenants was the value of the land at the time of the eviction. *Gore* v. *Brazier*, 3 Mass. 543. The value of the land, independent of the improvements, was

then $ 1200, and the value of the improvements $ 500 ; making, in round numbers, $ 1700. By improvements, we here under-stand buildings, or betterments, other than repairs, made by the defendant or the plaintiff, after the levy and before the expiration of the year allowed by law for the redemption. The great difficulty probably arises from the fact of these expensive betterments made upon a defeasible estate. We are of opinion, that if they were made by the creditor after the levy, the debtor could not be charged with them on redemption, for the reasons above stated. And being annexed to the realty, and having become part of the freehold, they would have constituted a part of the actual value at the time of redemption. Suppose them made by the plaintiff, they were made by him after he had acquired a title purporting to be absolute and indefeasible under the defendant's deed of warranty ; and we are of opinion, that as between the plaintiff and defendant, the loss must fall on the latter. It arises from want of caution in giving such a deed, when in fact he had only a defeasible estate. It follows, that if the plaintiff, instead of paying the sum he did, to extinguish this right of redemption, had yielded to it and given up the estate, his right on the defendant's covenant would have been to recover the value at the time of the redemption, enhanced by the value of the betterments which he had made upon it, deducting the sum he would have received on redemption.

We think there must be a more exact statement of the account and assessment of the damages, upon these principles. If the sum paid by the plaintiff for a release of the right of redemption was less than the defendant would have been liable for on redemption, then the sum thus paid by the plaintiff would give him a complete indemnity, and would be the measure of his damages ; but if he paid more, in order to redeem the estate, than the defendant would have been liable to him for, upon an actual redemption, then the damages, on this breach of covenant, cannot exceed the last mentioned sum.

*Wells & Rockwell,* for the plaintiff.
*Sumner & Byington,* for the defendant.